499 A.2d 192

**Rickey McMILLIAN**

v.

**STATE of Maryland.**

**No. 40, Sept. Term, 1985.**

Court of Special Appeals of Maryland.

Nov. 6, 1985.

Kathleen M. Brown, Assigned Public Defender, Baltimore (Alan H. Murrell, Public Defender, Baltimore, on the brief), for appellant.

Mark D. McCurdy, Asst. Atty. Gen., Baltimore (Stephen H. Sachs, Atty. Gen., Kurt L. Schmoke, State's Atty. for Baltimore City and Gary Ticknor, Asst. State's Atty. for Baltimore City, Baltimore, on the brief), for appellee.

Submitted before BISHOP, GARRITY, and ROSALYN B. BELL, JJ.

ROSALYN B. BELL, Judge.

Rickey McMillian was convicted by a jury in the Circuit Court for Baltimore City of first degree murder and theft of property over three hundred dollars. He was sentenced to a life term for the murder conviction. No sentence was imposed for the theft conviction.

On appeal, McMillian raises three issues:

1. "Did the trial court's improper comments and questions interfere with the fair conduct of Appellant's trial?

2. "Did the trial court err by denying Appellant a hearing on his motion to suppress physical evidence?

3. "Was the evidence adduced at trial legally insufficient to support Appellant's conviction of first degree murder?"

On October 12, 1983, Fannie Jones's body was found on the kitchen floor of her apartment with a pillow over her face. The telephone wire was sliced and two television sets were missing from her apartment. Rickey McMillian was arrested eight days later in connection with her death and the theft of her two television sets. McMillian confessed to killing the victim and stealing the television sets.

Approximately one week earlier, McMillian rented the basement apartment in a rooming house on Arunah Avenue in Baltimore. Fannie Jones owned the house and resided on the first floor. Approximately one week later, Ms. Jones asked McMillian to move out. On October 10, Maurice Hill, a roomer at the house, observed McMillian moving out of his apartment.

McMillian stated that on October 10 he began staying at the apartment of a friend, Mary Hudson. He alleged that he resided there until his arrest on October 20. Mary Hudson also shared the apartment with Delores Saunders, her mother, and Ms. Saunders' grandchildren.

Delores Saunders testified at trial that McMillian had borrowed her daughter's car on October 10 to move his belongings out of his apartment on Arunah Avenue. She recounted that when he returned several hours later, he brought two television sets and a tape deck into the Hudson apartment. She positively identified one of the State's exhibits as one of the two television sets he moved into the living room.

Mary Hudson related that on October 10, two television sets were brought into her home. She claimed, however, she did not know who brought them there. She also stated that McMillian had stayed in her apartment beginning on that date. Hudson further testified that McMillian initially

denied the murder when she questioned him after reading a news account of the death, but later admitted he had smothered the victim.

Dr. Dennis Smyth, the medical examiner, opined that the cause of death was blunt trauma to the chest. He estimated the death occurred between 12:00 p.m. October 11 and 1:00 a.m. October 12. The police concluded that Ms. Jones died on October 10—the date she was last seen alive. McMillian was not placed at the scene of the crime after October 10.

## I. TRIAL COURT'S CONDUCT

■ Appellant points to twelve instances of conduct on the part of the court which he asserts were improper and influenced the jury. He did not object to ten of these instances at trial, but is raising them for the first time on appeal. Appellant's failure to object at trial constitutes a "waiver estopping him from obtaining a review of the point or question on appeal." *Lohss v. State*, 272 Md. 113, 119, 321 A.2d 534 (1974). Md.Rule 1085. Even had appellant noted his objections, there was no error.

■ Three of the cited remarks were made at the bench out of the hearing of the jury. Appellant argues, however, that even if the jury could not hear what was said, the court's demeanor toward defense counsel had a chilling effect upon counsel's ability to provide effective representation. The record does not bear out this contention. Counsel thereafter continued to make objections and engage in effective cross-examination. Further, the record reveals that the court understood defense counsel's position and noted at least twice that "I know you are trying to protect your client."

■ Two additional remarks concerned defense counsel's tactics. At one point, the court rephrased counsel's question after suggesting it was "ridiculous." In another instance, the court cautioned counsel to "let alone" a witness laying a foundation for the admission of a diagram not

drawn to scale. In both instances, while the court should certainly have exercised greater restraint, the remarks were not tantamount to reversible error. *See Butler v. State,* 46 Md.App. 317, 416 A.2d 773 (1980).

■ The five remaining unchallenged instances of alleged misconduct involved the court's questioning of several State's witnesses. Appellant maintains that by such questioning, the judge assumed the role of prosecutor. It is well settled that a judge has the right to ask questions during a trial, *Johnson v. State,* 38 Md.App. 100, 107, 379 A.2d 436 (1977), *cert. denied,* 282 Md. 734 (1978), as long as that judge maintains "the line of impartiality over which [he or she] must not step." *Nestor v. State,* 243 Md. 438, 446, 221 A.2d 364 (1966), quoting *Vandegrift v. State,* 237 Md. 305, 311, 206 A.2d 250 (1965). Here, the court's questions were to clarify testimony and bring out the full facts. *Jefferies v. State,* 5 Md.App. 630, 632–33, 248 A.2d 807 (1969). The cited questions do not denote such unfairness, partiality or impropriety as to mandate reversal.

■ Of the remarks to which appellant did object, one involved a repetition of counsel's own characterization on cross-examination that the proposed inquiry was "silly." The record discloses that it was defense counsel himself who first described his questioning this way. The other instance involved questioning a police witness on direct examination about the number of fingerprints recovered from the crime scene. As we previously stated, it is not improper for a trial judge to clarify testimony to assure that the complete facts are brought out. *Nestor, supra; Jefferies, supra.* The questions were not improper.

## II. SUPPRESSION HEARING

Prior to trial, appellant filed a motion to suppress the introduction of the two television sets into evidence. The court heard proffers from both parties on appellant's

"standing"[1] to question the warrantless search and seizure of the sets from Ms. Hudson's apartment.

The State declared that appellant had no right to challenge the search and seizure because (1) appellant did not own the premises where the search and seizure occurred and paid no rent to reside there; (2) Delores Saunders voluntarily consented to the search and relinquished the television sets to the police; (3) appellant had placed the sets in the safekeeping of Ms. Saunders; and (4) the evidence was recovered from an area in the house outside his control.

The defense countered that (1) appellant was living and residing at the premises at the time of the search and seizure, and had done so for several days; (2) the police forcibly entered the area where appellant was staying and seized the sets; (3) appellant did not leave the television sets in third party hands, and (4) he did exercise dominion and control over the area where the items were seized. After hearing these proffers, the court concluded that without stipulation of the facts incident to the search and seizure, a hearing would be necessary.

The prosecution then advanced an additional ground to show appellant lacked standing. The State alleged that appellant had stolen the televisions and could not object to their seizure. Appellant retorted that the burden of proving his alleged unauthorized possession rested with the State. The following dialogue between the court and defense counsel then ensued.

"THE COURT: Just a minute, there are numerable cases mostly stolen automobiles, which are stopped and

---

1. The Supreme Court in *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); *reh. denied,* 439 U.S. 1122, 99 S.Ct. 1035, 59 L.Ed.2d 83 (1979), expressed disfavor with the term "standing" under the Fourth Amendment. Instead, the Court shifted the focus to the "extent of a particular defendant's rights under the Fourth Amendment." *Id.,* 439 U.S. at 139, 99 S.Ct. at 428. Since appellant, appellee and the trial court used the term "standing," we will utilize it here in our discussion of the procedural posture of this case.

searched where the courts hold that you don't have standing in light of it being stolen.

"Here the defendant may say these are not the victim's television sets or he didn't steel [sic] them, whatever his position is, but ultimately, *that is a question which must be decided by the jury and if there is an issue in the case for me to determine whether I find he stole them or they belonged to the victim is perhaps prejudicial without accomplishing very much.*

\*     \*     \*     \*     \*     \*

"THE COURT: If it turns out it [sic] was his television sets, which he had a right to have, therefore, they wouldn't be evidence against him because I assume the reason was to produce items which would be to show he took them from the victim in the case.

*"I don't see what purpose is served for my holding a mini trial to find out whether I find that the television sets were her property or rightly belonged in his hands.*

"[DEFENSE COUNSEL]: I don't see how the court can reach that conclusion.

"THE COURT: I'm not going to hold a hearing on this.

"[DEFENSE COUNSEL]: We again, for the record, do ask for a hearing on the motion.

\*     \*     \*     \*     \*     \*

"THE COURT: If it turns out this court has permitted reversible error because the televisions were introduced against his constitutional rights, I suppose reversible error would have to come to the Court of Appeals but I'm not going to rule on it now.

"The elements of the trial will vindicate my position." (emphasis added).

Appellant contends that the court erred in failing to rule on his motion to suppress physical evidence and in denying him an evidentiary hearing on that motion. By deciding that it would not hold a hearing on the ownership of the television sets, the court, in effect, did rule on the suppression motion—the sets were admitted at trial over appellant's

objection. It is pellucid, however, that there was no stipulated factual basis upon which to formulate the ruling. The court failed to find the factual predicates required to determine whether the appellant had a legitimate expectation of privacy in the invaded premises, or "standing," and if he did, whether the police conduct was lawful. We hold this to be error.

We note the court's hesitance to address the "thorny" issue of "standing" in a motion to suppress. It is not uncommon for a court to circumvent this issue and rule on the merits instead. *Graham v. State,* 47 Md.App. 287, 290, 421 A.2d 1385 (1980), *cert. denied,* 290 Md. 715 (1981). Nevertheless, difficult questions deserve resolution no less than simple ones. The court's omission could have been remedied easily at a hearing on the motion. As we stated in *Graham, supra,* "[p]utting the cart before the horse may sometimes be easier to do, but it does make the ultimate journey considerably more difficult." *Id.* at 291, 421 A.2d 1385.

### —Rule 4–252(f)—

■ Md.Rule 4–252(f) requires that with the exception of a speedy trial motion, a pre-trial motion shall be determined prior to trial. Appellant concludes that the court violated Rule 4–252(f) by depriving him of a suppression hearing. Both appellant and the State have focused their argument on this issue. While we agree with the State that generally no hearing is required under the rule, where, as here, a factual dispute is central to the resolution of the motion, an evidentiary hearing is required. We will elaborate.

### —The Principles of Search and Seizure—[2]

■ When confronted with a motion to suppress evidence, a court must engage in a two-prong inquiry. *Graham v.*

---

**2.** The Court of Appeals has repeatedly stated that Art. 26 of the Maryland Declaration of Rights is in *pari materia* with the Fourth Amendment and "decisions of the Supreme Court on the kindred 4th Amendment are entitled to great respect." *Gahan v. State,* 290 Md.

*State,* 47 Md.App. at 291, 421 A.2d 1385. First, the court must determine whether the movant has a lawful right under the Constitution to contest the search and seizure. If he does not, the inquiry ends, and the evidence may not be suppressed. *Id.* Assuming the defendant can establish constitutional aggrievement, only then can the court assess the validity of the police activity. *Id.*

■ A defendant may establish his standing to object to a search [3] only by demonstrating under the totality of circumstances that he had a "legitimate expectation of privacy in the area invaded at the time of the search." *See Rawlings v. Kentucky,* 448 U.S. 98, 104, 100 S.Ct. 2556, 2561, 65 L.Ed.2d 663 (1980). This Court has held that the legitimacy of one's expectation is in "large measure a function of its reasonableness, and that, in turn, is determined to some extent by the elements of time, place, and circumstance." *Graham v. State,* 47 Md.App. at 294, 421 A.2d 1385.

■ In *Graham,* we held that the thief of a moped and backpack had no expectation of privacy in those items during an inventory search and seizure on a public street after the moped was lawfully stopped for a traffic infraction. We concluded the ownership of the items searched and seized was only one factor to consider in assessing "the time and place and circumstance" surrounding a search. *Graham,* 47 Md.App. at 294, 421 A.2d 1385. The fact that the goods seized might be stolen may not, then, necessarily defeat a defendant's legitimate expectation of privacy. Further, unlike the complainant in *Graham,* appellant here contends the search and seizure occurred in his living

---

310, 321, 430 A.2d 49 (1981) quoting *Givner v. State,* 210 Md. 484, 498, 124 A.2d 764 (1956).

**3.** Ownership or legal possession of the seized evidence may be sufficient in some circumstances to entitle a defendant to seek the return of the seized property if the seizure, as opposed to the search, was illegal. *See United States v. Salvucci,* 448 U.S. 83, 91 n. 6, 100 S.Ct. 2547, 2552 n. 6, 65 L.Ed.2d 619 (1980), *citing United States v. Lisk,* 522 F.2d 228 (7th Cir.1975), *cert. denied,* 423 U.S. 1078, 96 S.Ct. 865, 47 L.Ed.2d 89 (1976).

quarters. It is well settled that one has a greater expectation of privacy in his home than in a vehicle. *See e.g. McDonald v. United States*, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153 (1948); *United States v. Martinez-Fuerte*, 428 U.S. 543, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976); *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977). In sum, a motion to suppress will be granted only if (1) the defendant can demonstrate that he has a legitimate expectation of privacy in the premises searched and (2) the search and seizure was unlawful.

### —The Case Sub Judice—

In the case *sub judice*, the court did not undertake a consideration of either aspect of the two-prong inquiry. No facts were found by the court upon which it could make a finding that appellant did or did not have a legitimate expectation of privacy in the area searched, or that the search and seizure was or was not valid. Without deciding either prong, the court ruled that because the evidence "might be stolen," appellant could not contest the police action.

An evidentiary hearing was necessary for appellant to demonstrate initially whether under the totality of circumstances he had "standing". At this hearing, the court should have considered factors of "time, place, and circumstance" including: the appellant's possessory interest in the premises, *see United States v. Jeffers*, 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59 (1951); appellant's right to and duration of stay at the searched premises, *see Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), *reh. denied*, 439 U.S. 1122, 99 S.Ct. 1035, 59 L.Ed.2d 83 (1979), citing *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), *overruled on other grounds, United States v. Salvucci*, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980); whether or not he had unlimited access to the searched premises, *see Rakas v. Illinois, supra;* whether appellant had a right to exclude others from access to the searched area, *see Rakas v. Illinois, supra;* what precautions he

took to maintain his privacy there, *see Rawlings v. Kentucky, supra; United States v. Chadwick, supra; Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); appellant's subjective expectation of privacy in the area searched, *see Rawlings v. Kentucky, supra;* the location of the property at the time of the search, *see Rakas v. Illinois, supra; Rawlings v. Kentucky, supra;* ownership of the evidence seized, *see Graham v. State, supra;* the alleged bailment of the sets to a third party, *see Rawlings v. Kentucky, supra.* After examining these and any other relevant factors and deciding whether in the totality of circumstances appellant had a legitimate expectation of privacy in the Hudson home, the court should then, if appropriate, have reached the merits of the motion.[4]

The State suggests that even if the court erred in denying a hearing, "[its] position was ultimately vindicated by the testimony elicited at trial. This testimony indicated that the television sets were legally seized." In determining whether the granting or denial of a suppression motion is correct, we have held that a reviewing court must look to the record of the suppression hearing and not to the evidence presented at trial. *Jackson v. State,* 52 Md.App. 327, 332 n. 5, 449 A.2d 438 (1982), *cert. denied,* 294 Md. 652 (1982), citing *Pharr v. State,* 36 Md.App. 615, 375 A.2d 1129 (1977), *cert. denied,* 281 Md. 742 (1977). It is of no consequence that in a retrospective examination of the trial record appellant may not have established a legitimate expectation of privacy in the Hudson home. The failure to hold a suppression hearing was error.

Having concluded this denial was error, we order a remand of this case to determine the admissibility of the seized evidence. The scope of that remand will be discussed *infra.*

---

**4.** Since the trial court did not reach the merits of the motion to suppress, we need not examine the reasonableness of the search itself, including the effectiveness of Ms. Saunders's consent to search the Hudson apartment. Rule 1085.

### III.  SUFFICIENCY OF THE EVIDENCE

Appellant lastly challenges the evidence adduced at trial to support his murder conviction.

The State must establish independent proof of the *corpus delecti* under Maryland law to sustain a murder conviction. *Jones v. State*, 188 Md. 263, 52 A.2d 484 (1947). Appellant asserts that "[t]he only evidence actually connecting [him] to the death of Ms. Jones was his statement given shortly after his arrest on October 20." He further argues that "Mary Hudson's testimony cannot be deemed sufficient corroboration of [his] confession, as it was merely his confession in another form: inculpatory statements to Ms. Hudson rather than to Detective Lamartina." Finally, he concludes that "the television sets seized from Ms. Hudson's apartment, or testimony relating to the sets" was also insufficient to connect him to the crime.

It has long been the rule in this jurisdiction that an extrajudicial confession of an accused cannot, by itself, warrant a conviction unless there is also evidence, independent of the confession, which relates to and tends to establish the *corpus delicti*. *Lemons v. State*, 49 Md.App. 467, 472, 433 A.2d 1179 (1981). Independent proof of the *corpus delicti* may either be through direct or circumstantial evidence. *Jones*, 188 Md. at 272, 52 A.2d 484. Evidence is corroborative if it touches and concerns the *corpus delicti* and fortifies the truth of the accompanying confession. *Lemons v. State*, 49 Md.App. at 472, 433 A.2d 1179. In addition to being corroborative, the evidence must also be independent of the confession. *Id.* Multiple confessions of an accused cannot be viewed as corroborative of one another. *Id.* at 473, 433 A.2d 1179. Finally, the quantum of proof necessary to establish the *corpus delicti* depends upon the facts and circumstances of the particular case. *Id.*

In *Jones, supra,* the Court articulated the two elements of the *corpus delicti* of homicide to which the independent evidence must relate:

"In a homicide case the proof of the *corpus delecti* is sufficient if it establishes the fact that the person for whose death the prosecution was instituted is dead, and that the death occurred under circumstances which indicate that it was caused criminally by someone."

*Id.* at 272, 52 A.2d 484.

We set out the test for distilling the sufficiency of the evidence under similar circumstances in *Lemons v. State, supra.*

"[T]he inquiry on appeal as to whether there is adequate independent evidence of the corpus delecti to corroborate a confession to such an extent as to support a murder conviction amounts to the following: considering the independent evidence of the corpus delecti, together with the confession and the circumstances of the particular case, and viewing all of that in a light most favorable to the prosecution, could any rational trier of fact conclude beyond a reasonable doubt that the alleged victim is dead and that such victim was murdered by the accused?"

*Id.* at 474, 433 A.2d 1179.

In the instant case, the State established that Ms. Jones died under criminal circumstances. She was found dead on her kitchen floor with a pillow over her face. The police concluded she was killed on or about October 10, 1983, although the medical examiner estimated her death between 12:00 p.m. October 11 and 1:00 a.m. October 12. Moreover, several witnesses recounted that October 10 was the last day the victim was seen alive, and appellant was seen moving his belongings out of her house that same day. In addition, the appellant moved the victim's two television sets into the Hudson home that same evening. Considering this independent evidence together with the confessions to the police and Mary Hudson, and viewing it in a light most favorable to the prosecution, we hold that a rational trier of fact could conclude beyond a reasonable doubt that the

victim was dead and appellant murdered her.  *Lemons v. State,* 49 Md.App. at 474, 433 A.2d 1179.[5]

Appellant also contends that even if there was sufficient independent evidence, the State failed to prove the necessary elements of wilfulness, premeditation or deliberation to sustain the conviction for first degree murder.  In determining whether a homicide is wilfull, premeditated or deliberate, the applicable principles of law are well settled in Maryland.  A killing is "wilfull" when there is a specific purpose and intent to kill; it is "deliberate" when there is full and conscious knowledge of the purpose to kill; and it is "premeditated" when the plan to kill preceded the killing by an appreciable length of time.  *Tichnell v. State,* 287 Md. 695, 717, 415 A.2d 830 (1980).  Their existence can be discerned from the facts of the case.  *Id.* at 718, 415 A.2d 830.

In the case before us, appellant confessed that he retrieved a pillow from the back bedroom which he then took to the kitchen and put over the victim's face.  He further stated that as she struggled, he laid her down on the floor and pushed the pillow against her face for seven to eight minutes.  We hold that this evidence is sufficient to establish the requisite elements of first degree murder.

## CONCLUSION

In *Wiener v. State,* 290 Md. 425, 430 A.2d 588 (1981), the Court of Appeals sanctioned the use of a limited remand in certain criminal cases.  *Wiener* drew a clear distinction between legal rulings which can be examined in a vacuum and those that are so inextricably interwoven with questions of law and fact as to preclude a separation of the

---

**5.** Whether there was sufficient independent evidence to support the *corpus delicti* absent the television sets is not presently before us.  In the event the evidence of the television sets is suppressed and a new trial follows, we will not speculate on the adequacy of the precise evidence that would be produced to support the murder conviction.

issues. *Bates v. State,* 64 Md.App. 279, 289, 494 A.2d 976 (1985). This matter is of the former nature.

Accordingly, we order a remand of this case under Md. Rule 1071 for the limited purpose of holding a suppression hearing. *Bates v. State, supra.* If it is determined at the hearing appellant lacked the legitimate expectation of privacy in the premises to contest the search and seizure, the trial on the murder and theft charges was free from error and the convictions will stand. *Bates v. State, supra* at 292, 494 A.2d 976. If it is determined that appellant had the requisite expectation of privacy and the search and seizure was reasonable, the judgment of conviction on murder and theft will also stand.[6] *Id.* If, on the other hand, the search and seizure is adjudged constitutionally infirm, and the evidence inadmissible, the court will award appellant a new trial on the charges of theft and first degree murder. *Id.* The final judgments of guilty on the murder and theft verdicts are contingently affirmed pending the result upon remand of the Fourth Amendment suppression hearing. *Id.*

CASE REMANDED, WITHOUT AFFIRMANCE OR REVERSAL, TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR THE PURPOSE OF CONDUCTING A SUPPRESSION HEARING ON LEGITIMATE EXPECTATION OF PRIVACY AND THE FOURTH AMENDMENT MERITS.

THE JUDGMENTS OF CONVICTION ON FIRST DEGREE MURDER AND ON THEFT OVER $300 REMAIN IN EFFECT PENDING FURTHER PROCEEDINGS.

COSTS TO BE PAID ⅔ BY APPELLANT AND ⅓ BY MAYOR AND CITY COUNCIL OF BALTIMORE.

---

6. If the court ultimately denies the motion to suppress, appellant may appeal the trial court's determination. *Bates v. State,* 64 Md.App. 279, 292, 494 A.2d 976.