Abraham CHAPA, Appellant,

v.

The STATE of Texas, Appellee.

No. 914–85.

Court of Criminal Appeals of Texas, En Banc.

April 8, 1987.

OPINION ON APPELLANT'S PETITION
FOR DISCRETIONARY REVIEW

CLINTON, Judge.

At issue in this cause is whether a "passenger qua passenger" in a *taxicab* has "standing" to challenge a search of the interior of the cab under the Fourth Amendment to the United States Constitution, in light of the Supreme Court's opinion in *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978).

Following his plea of nolo contendere and judicial confession to the offense of possession of heroin, appellant was convicted and sentenced to 16 years confinement in the Texas Department of Corrections. Prior to the entry of his plea appellant had filed a motion to suppress the heroin on the basis that it had been obtained as a result of "an illegal detention, illegal arrest and illegal search and seizure." After a brief hearing the trial court denied this motion upon the State's argument that appellant had failed to establish standing to contest admission of the heroin. In a single ground of error on appeal appellant contended the trial court erred in denying him standing to contest the search of the taxicab. The Fourteenth Court of Appeals somewhat summarily overruled his ground of error. *Chapa v. State*, 694 S.W.2d 202 (Tex.App.—Houston [14th] 1985). We granted appellant's petition for discretionary review under what is now Tex.R.App.Pro. Rule 200(c)(2).

### I.

 At the outset of the hearing on the motion to suppress the State moved that before reaching the merits of his Fourth Amendment claims, appellant be "required to show that [he] had an expectation of privacy in the place that was supposedly searched and that [he] had possession of the drug, to show standing to object to the search."[1] Though appellant's mo-

Geraldo Acosta, Houston (Brian W. Wice, of counsel), for appellant.

John B. Holmes, Jr., Dist. Atty. and Timothy G. Taft and Lyn McClellan, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for State.

1. That appellant failed to assert ownership in the contraband would be relevant to a challenge of its *seizure,* but here the challenge is to the *search,* of which the heroin was a fruit. See

*United States v. Jacobsen,* 466 U.S. 109, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984) (distinguishing "searches" and "seizures"). So long as appellant can establish a reasonable expectation of priva-

tion to suppress embraced allegations of a detention prior to the search of the cab, the legality of which he clearly had standing to contest, see *Lewis v. State,* 664 S.W.2d 345 (Tex.Cr.App.1984), he failed to raise this contention in his response to the State's argument. Thus, straightaway the issue was confined to whether appellant had standing to contest the search of the taxi.

Accordingly, appellant testified that on the day of his arrest, after waiting for a late city bus, he and his wife stepped into a lounge to call a taxicab. There they waited for about a half an hour, and were joined by a friend who wanted to stay with them at their hotel. When the cab arrived they all got in, appellant in the front seat next to the driver, and his wife and friend in the

back. The driver was instructed to take them to their hotel. As the cab began to pull out of the driveway of the lounge, however, it was stopped by two Houston police officers. Appellant was removed from the cab and his person searched. When this search yielded nothing, one of the officers began to search the area under and around the front seat, including some books belonging to the cab driver. After what "could have been three, four minutes" of searching, the officer discovered an aluminum foil packet under the front seat, containing what he suspected to be heroin, and appellant was arrested.

■■■ Appellant's motion to suppress was denied. In the court of appeals he maintained he had established a legitimate

---

cy in the area searched, he has shown standing. See text, *post.*

Without clearly explaining why he believes it to be constitutionally significant, Presiding Judge Onion points out that at the suppression hearing appellant disclaimed ownership of the heroin. Apparently Judge Onion is of the view that, absent a claim of "ownership" (or at least "possession") of the contraband, appellant could assert no more than a vicarious claim of a Fourth Amendment violation—hence, his reliance upon *United States v. Salvucci,* 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980) and *Alderman v. United States,* 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969). But these cases actually cut the other way.

In *Salvucci* the Supreme Court abolished the socalled "automatic standing" rule established in *Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), whereby defendants accused of possessory offenses were deemed automatically to have standing to contest admissibility of the contraband. In the process, however, and expressly relying upon *Rakas,* supra, the Court rejected the notion that for an accused to show standing to challenge a search "possession of a seized good [could serve] as a substitute for a factual finding that the owner of the good had a legitimate expectation of privacy in the area searched." 448 U.S. at 92, 100 S.Ct. at 2553, 65 L.Ed.2d at 628. When admitted possession of the item seized as a consequence of an illegal search will not alone suffice to *confer* standing to challenge that search, how can it now be argued that denial of ownership or possession of the item seized will *defeat* an otherwise valid conclusion that appellant had a reasonable expectation of privacy in the area he alleges was illegally searched?

The answer is that it cannot. In *Alderman,* supra, the Supreme Court held that a homeowner had standing to contest admission of transcripts of illegally obtained telephone con-

versations occurring in his home, even though the homeowner himself was not a party to the conversations. Responding to arguments made in dissenting opinions that the homeowner could not have had a privacy interest in conversations of others, even though conducted on his premises, the majority observed:

"Mr. Justice Harlan and Mr. Justice Stewart, who are in partial dissent on this phase of the case, object to our protecting the homeowner against the use of third-party conversations overheard on his premises by an unauthorized surveillance. Their position is that unless the conversational privacy of the homeowner himself is invaded, there is no basis in the Fourth Amendment for excluding third-party conversations overheard on his premises. We cannot agree. If the police make an unwarranted search of a house and seize tangible property belonging to third parties—even a transcript of a third-party conversation—the homeowner may object to its use against him, *not because he had any interest in the seized items as "effects" protected by the Fourth Amendment, but because they were the fruits of an unauthorized search of his house,* which is itself expressly protected by the Fourth Amendment. Nothing seen or found on the premises may legally form the basis for an arrest or search warrant or for testimony at the homeowner's trial, since the prosecution would be using the fruits of a Fourth Amendment violation. [Citations omitted]." If appellant here can establish a reasonable expectation of privacy in the place searched, namely, the interior of the taxicab, then it becomes analogous to a home for Fourth Amendment purposes; any items seized as a result of an unlawful intrusion therein must be suppressed as fruit of the poisonous tree, regardless of whether appellant claims or disclaims possession or ownership of those items. (All emphasis supplied unless otherwise indicated.)

expectation of privacy, and hence standing, by simple virtue of having been "a paying customer of the cab with an implied agreement that he could restrict access to the cab by other riders[.]" *Chapa v. State,* supra, at 203. To this argument the court of appeals replied, cryptically:

"We fail to see how the fact that appellant hired the cab gave him any greater rights than an ordinary passenger. A taxi cab is still a highly mobile motor vehicle subject to the same, if not more, licensing and registration regulations as other vehicles. These are the factors that justify the motor vehicle exception. See *California v. Carney,* [471] U.S. [386], 105 S.Ct. 2066, 85 [L.Ed.2d] 406 (1985)."

*Id.* If we correctly interpret this passage to be an invocation of Supreme Court cases establishing an exception to the warrant requirement to support the proposition that appellant has *no* legitimate expectation of privacy in the taxi, simply because it is a motor vehicle, then the analysis of the court of appeals is off the mark. While it is true that "the pervasive schemes of regulation" of motor vehicles "necessarily lead to *reduced* expectations of privacy," *California v. Carney,* 471 U.S. at 392, 105 S.Ct. [at] 2070, 85 L.Ed.2d [at] 414, that regulation does not dispel such expectations altogether. "The word 'automobile' is not a talisman in whose presence the Fourth Amendment fades away and disappears." *Coolidge v. New Hampshire,* 403 U.S. 443, 461, 91 S.Ct. 2022, 2035, 29 L.Ed.2d 564, 580 (1971). Probable cause is still required to justify the search of an automobile, even if a warrant is not. *California v. Carney,* supra, and its progenitors are inapposite to resolution of the issue at hand.

## II.

In *Rakas v. Illinois,* supra, the substantive question of what constitutes a "search" for purposes of the Fourth Amendment was effectively merged with what had been a procedural question of "standing" to challenge such a search. It became a matter, not only of whether some "reasonable," "justifiable" or "legitimate expectation of privacy" in a particular place exists, which has been breached by governmental action, *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *Smith v. Maryland,* 442 U.S. 735, 740, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220, 226 (1979), but also of *who* reasonably, justifiably or legitimately harbored that expectation. The litmus for determining existence of a legitimate expectation of privacy as to a particular accused is twofold: first, did he exhibit by his conduct "an actual (subjective) expectation of privacy[;]" and second, if he did, was that subjective expectation "one that society is prepared to recognize as 'reasonable.'" *Smith v. Maryland,* 442 U.S. at 740, 99 S.Ct. at 2580, 61 L.Ed.2d at 226–27.

■ Appellant testified at the hearing that upon entering the taxicab he did indeed have an expectation of privacy therein. So long as that expectation is one society is prepared to recognize, we are satisfied that merely getting into the cab, closing the door and setting out, was conduct sufficient to manifest a subjective expectation,[2] and thus we proceed to the objective inquiry.

In *Rakas v. Illinois,* supra, the Supreme Court observed:

"Legitimation of expectations of privacy by law must have a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or *to understandings that are recognized and permitted by society.* One of the main rights attaching to property is the right to exclude others, see W. Blackstone, Commentaries, Book 2, ch. 1, and one who owns or lawfully possesses *or controls* property will in all likelihood have a legitimate expectation of privacy by virtue of this right to exclude."

**2.** The State argues that because appellant had originally intended to take a public bus, it is obvious his purpose in calling the cab was to obtain transportation, not privacy. Just because his primary objective was simply to get back to his hotel, however, it does not follow that once he stepped into the cab he could not have harbored a subjective expectation of privacy within.

439 U.S. 144 n. 12, 99 S.Ct. 431 n. 12, 58 L.Ed.2d 401 n. 12.

 It is true that, as with the passengers in *Rakas*, appellant "asserted neither a property nor a possessory interest in the automobile" he was riding in. But this fact is not alone determinative, for appellant nevertheless exercised a significant degree of control over the taxicab. As a presumptively paying fare he could determine its destination for the duration of his presence therein. Moreover, though lacking ownership or possessory interest in the cab, appellant and his companions could nevertheless exclude others from it during their ride. Houston, Tex., Code § 46–29 (1985), provides:

> "Any passenger who engages the services of a taxicab shall have the *exclusive* right to the passenger compartment of the taxicab and it shall be unlawful for a taxicab driver or permittee to carry additional passengers unless specific permission is obtained from the passenger who engaged the taxicab originally."

Comparable provisions may be found in the municipal codes of Austin, San Antonio,[3] and, no doubt, other cities in Texas, and in other states. See, e.g., *Bates v. State*, 64 Md.App. 279, 494 A.2d 976, 979 (1985); *People v. Castro*, 125 Misc.2d 15, 479 N.Y. S.2d 414, 420 n. 10 (Sup.Ct.N.Y.Co.1984). A clearer indicium of society's preparedness to accept as reasonable an expectation of privacy in the passenger compartment of a taxicab could hardly be imagined.

 The State argues that whatever expectation of privacy appellant could claim in the interior of the taxi would not extend to the area under the front seat, which the State maintains was a personal repository for the cab driver, whom appellant "did not know from Adam."[4] We agree that for Fourth Amendment purposes appellant could not have legitimately expected privacy in any area or receptacle within the exclusive control of the cab driver. *Rawlings v. Kentucky*, 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980). Any area of the taxicab that appellant could legitimately occupy, however, would not be a "repository" personal to the cab driver alone, at least for the period of appellant's occupancy. In view of the fact that appellant sat in the front passenger side of the taxicab, it was reasonable for him to expect he could stow his personal effects underneath the front seat without fear of government intrusion. As Judge Moylan of the Court of Special Appeals of Maryland observed in *Bates v. State*, supra, 494 A.2d at 979–980:

> "Involved is not the expectation of the passenger vis-a-vis the driver but vis-a-vis the rest of the world.... The taxicab driver in this case did not invite the police into the taxicab. We are not arbi-

---

**3.** See San Antonio, Tex., Code § 33–127 (1986); Austin, Tex., Code §§ 8–7–152, 8–7–172(b) (1981).

In a pair of footnotes the dissenting opinion takes us to task for citing the Houston ordinance to "bolster" our finding of a socially recognized expectation of privacy. It is urged both that we do not know whether the ordinance was in effect at the time of the challenged search (it was), and that at any rate the ordinance is an improper subject for judicial notice at this time. Whether a particular expectation of privacy is one society is willing to recognize, however, is in the nature of a legal rather than a factual inquiry. All that is necessary to be proven as a factual matter is the particular context in which appellant harbored that expectation. It is then left to be resolved as a matter of law whether in the context shown society is willing to sanction that expectation as reasonable or legitimate. Thus, we notice the Houston ordinance and others not as "adjudicative facts," which formerly could not be done at all, and for which under the new rules, a formal request, along with

"sufficient information," may be required in the trial court. See Tex.R.Cr.Evid., Rule 204. Rather, we notice the existence of these ordinances as a social, or "legislative fact," helpful in resolution of the constitutional question whether in the context proven, society recognizes the asserted expectation of privacy as a reasonable one. See C. McCormick, Handbook of the Law of Evidence, §§ 328, 331 (3d ed. 1984). That the ordinance was neither proven nor judicially noticed below is of no moment.

**4.** In truth, the record does not reflect whether appellant knew the cab driver. Appellant testified that after his arrest he was placed in the squad car. Already in the car was an individual appellant "did not know ... from Adam," but whom he later learned was named Sergio Sefuentes. Nothing in the record shows this individual to have been the driver of the taxicab. Ultimately, it makes no difference to our analysis whether appellant knew the driver or not.

trating the rights, powers, authority, or obligations of the taxicab driver or the passenger vis-a-vis each other. Although the Fourth Amendment expectations of the passenger might (we do not decide) have been defeasible at the hands of the taxicab driver, they were not compromised vis-a-vis the police."

That the driver of the cab, though a perfect stranger, may have shared a degree of privacy in the area beneath the front seat (as opposed to receptacles kept there, belonging exclusively to him) does not defeat appellant's reasonable claim to freedom from government intrusion there.

■ We hold that appellant qua fare in a taxicab had a legitimate expectation of privacy in, and hence standing to challenge the search of, the area under the front seat of the taxicab.

Consequently, the judgment of the court of appeals is reversed and the cause remanded for new trial, in which appellant shall be allowed the opportunity to litigate the merits of his Fourth Amendment claim.[5]

CAMPBELL and WHITE, JJ., concur in result.

ONION, Presiding Judge, dissenting.

If you'll pardon an expression I use "Color me amazed one more time." The majority holds that the appellant, a fare in a taxicab, had a legitimate expectation of privacy in, and hence standing, to challenge the search of the area of the front seat of the taxicab, even though he disclaimed ownership of the heroin found there.

Prior to trial appellant filed a motion to suppress evidence claiming his arrest was without warrant or probable cause and the evidence seized was obtained illegally. At the hearing on said motion the State asked that the appellant first establish his "stand-

ing" to assert that his Fourth Amendment rights had been violated as alleged in the motion. Appellant was sworn and testified that about 9 or 9:30 p.m. on August 10, 1984 he was in the vicinity of Fulton and Booth Streets in Houston with his wife waiting for a bus. While there a friend, Reyna, came by and borrowed ten dollars from the appellant. When the bus did not come after about twenty minutes, appellant and his wife went across the street to a lounge, drank a few beers and called a cab. Reyna reappeared at the lounge and needed a place to stay so appellant offered him a place to stay. When the taxicab arrived, Reyna and appellant's wife got in the back seat and appellant got in the front passenger seat and gave "Texas State Hotel" as their destination. As the cab pulled out of the driveway of the lounge, police officers drove up and stopped the cab, and asked appellant to get out. He was searched, but no contraband was found on his person. An officer then began to search the cab, looked through some books of the cab driver in the front seat, looked under the floor mats, and reached under the front seat and retrieved a piece of aluminum foil. The officer opened it up, smelled it and said it was heroin. Appellant's wife and Reyna were then searched but no contraband was found.

On cross-examination appellant stated he did not put the tin foil and its contents under the seat of the cab, had no idea how it got there, and that the tin foil and its contents were not his. On re-direct examination appellant stated he had never seen the taxi driver before and "did not know him from Adam."

At the conclusion of appellant's testimony[1] the prosecutor urged that appellant had denied the "property" was his and that he had no reasonable expectation of privacy in the location where the property was

5. Appellant does not raise, nor need we decide, the question of whether he had "standing" to challenge the search of the taxi under Art. I, § 9 of the Constitution of the State of Texas.

1. Appellant was the sole witness at the hearing on the motion to suppress. No Houston City Ordinance was offered and proven. At the time the court could not have taken judicial notice of

such ordinance. *Peach v. State*, 498 S.W.2d 192 (Tex.Cr.App.1973); *Cole v. State*, 556 S.W.2d 343 (Tex.Cr.App.1977); *Green v. State*, 594 S.W.2d 72 (Tex.Cr.App.1980); *Lange v. State*, 639 S.W.2d 304 (Tex.Cr.App.1982); *Howeth v. State*, 645 S.W.2d 787 (Tex.Cr.App.1983); *Lalande v. State*, 676 S.W.2d 115 (Tex.Cr.App.1984).

found and under all the circumstances he had not established "standing." The motion to suppress was then denied.

Thereafter on the same day appellant entered his plea of nolo contendere in a bench trial after the State moved to dismiss the allegations of two prior felony convictions alleged for enhancement of punishment. The appellant's sworn judicial confession admitted the allegations of the indictment as to possession of heroin were true and correct. As a result of a plea bargain the court assessed punishment at sixteen years' imprisonment.

Despite his plea of guilty and his judicial confession, appellant was still able to appeal the ruling on the pre-trial motion to suppress. Article 42.02, V.A.C.C.P.; *Morgan v. State*, 688 S.W.2d 504 (Tex.Cr.App. 1985).

Citing *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), and *California v. Carney*, 471 U.S. 386, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985), the Court of Appeals held under the circumstances appellant had no legitimate expectation of privacy and had not established "standing" to assert that his Fourth Amendment rights had been violated. The court found that the trial court did not err in overruling the pre-trial motion to suppress.

To invoke the exclusionary rule, a defendant must establish his own Fourth Amendment rights were violated by an unlawful search and seizure. Attempts to vicariously assert violations of the Fourth Amendment rights of others have been repeatedly rejected. See, e.g., *United States v. Salvucci*, 448 U.S. 83, 86, 100 S.Ct. 2547, 2550, 65 L.Ed.2d 169 (1980); *Alderman v. United States*, 394 U.S. 165, 174, 89 S.Ct. 961, 966, 22 L.Ed.2d 176 (1969). See also *United States v. Vicknair*, 610 F.2d 372, 377 (5th Cir.1980), cert. den. 449 U.S. 823, 101 S.Ct. 83, 66 L.Ed.2d 25 (1981); *United States v. Byers*, 600 F.2d 1130, 1132 (5th Cir.1979).

In *Rakas v. Illinois*, supra, the United States Supreme Court held that individuals, who assert neither a property nor a possessory interest in the automobile searched nor an interest in the property seized, and who fail to show that they had a legitimate expectation of privacy in the glove compartment or the area under the seat of the vehicle in which they were merely passengers, were not entitled to challenge the search of those areas.

The Court wrote:

"Judged by the foregoing analysis, petitioners' claims must fail. *They asserted neither a property nor a possessory interest in the automobile, nor an interest in the property seized.* And as we have previously indicated, the fact that they were 'legitimately on [the] premises' in the sense that they were in the car with the permission of its owner is not determinative of whether they had a legitimate expectation of privacy in the particular areas of the automobile searched. It is unnecessary for us to decide here whether the same expectations of privacy are warranted in a car as would be justified in a dwelling place in analogous circumstances. We have on numerous occasions pointed out that cars are not to be treated identically with houses or Apartments for Fourth Amendment purposes. See *United States .v Chadwick*, 433 U.S., at 12, 97 S.Ct., at 2484; *United States v. Martinez-Fuerte*, 428 U.S. 543, 561, 96 S.Ct. 3074, 3084, 49 L.Ed.2d 1116 (1976); *Cardwell v. Lewis*, 417 U.S. 583, 590, 94 S.Ct. 2464, 2469, 41 L.Ed.2d 325 (1974) (plurality opinion). But here petitioners' claim is one which would fail even in an analogous situation in a dwelling place, since they made no showing that they had any legitimate expectation of privacy in the glove compartment or area under the seat of the car in which they were merely passengers. Like the trunk of an automobile, these are areas in which a passenger *qua* passenger simply would not normally have a legitimate expectation of privacy. *Supra,* [99 S.Ct.] at 430." (Footnote omitted.) (Emphasis supplied.)

"*Rakas* shifted the focus of the standing question from whether an individual was an object of a search or seizure to whether the individual's right to privacy

in either the place searched or in the repository of the seized evidence was violated by the warrantless search and seizure. This focus requires a determination of 'whether the disputed serach and seizure has infringed an interest of the defendant which the Fourth Amendment was designed to protect.' 439 U.S. at 140, 99 S.Ct. at 429, 58 L.Ed.2d at 399." *United States v. Torres,* 720 F.2d 1506 (11th Cir.1983).

As *Rakas* noted, the question of whether a defendant's Fourth Amendment rights have been violated by an illegal search pivots on the defendant's "legitimate expectation of privacy" in the area search. 439 U.S. at 143, 99 S.Ct. at 430. "While an ownership or possessory interest is not necessarily required, the mere legitimate presence on the searched premises by invitation or otherwise is insufficient in itself to create a protectable expectation." *United States v. Meyer,* 656 F.2d 979, 981 (5th Cir.1981).

In *Rawlings v. Kentucky,* 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980), the Court held that Rawlings' admission at the suppression hearing that he did not believe that a purse belonging to a female acquaintance would be free from governmental intrusion supported the conclusion that Rawlings did not meet his burden to prove that he had a legitimate expectation of privacy in the purse in which certain drugs were found by the officers. The court also held that the mere fact that Rawlings claimed ownership of the drugs found in the purse did not entitle him to challenge the search of the purse.

In *Curren v. State,* 656 S.W.2d 124 (Tex. App.—San Antonio 1983), the court found that the defendant had no legitimate expectation of privacy in the contents of a purse of a woman passenger found on the dashboard of a car "parked suspiciously alongside a median in the street" with the appellant outside the car near an area where heavy equipment was stored. At the suppression hearing appellant offered no evidence establishing a proprietary interest in the purse containing the contraband.

There the court, speaking through Justice Cantu, wrote:

"Under *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), a defendant who seeks to suppress evidence of crime must show that some personal Fourth Amendment right of his was implicated in the police actions leading to seizure of the evidence. He must show that he himself had some 'legitimate expectation of privacy' that was improperly intruded upon by agents of the government. *United States v. Salvucci,* 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980). This now applies with equal force to possessory offenses. The 'automatic standing' rule of *Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960) was expressly abandoned in *Salvucci* and was not available to appellant at his hearing held on November 9, 1981, after the effective date of the *Salvucci* ruling.

"In the absence of some showing that appellant entertained a legitimate expectation of privacy in the purse and its contents, appellant is without standing to challenge the legality of the search. *Goehring v. State,* 627 S.W.2d 159 (Tex. Cr.App.1982); *Manry v. State,* 621 S.W.2d 619 (Tex.Cr.App.1981)."

In the instant case a taxicab was involved. A taxicab is still a highly mobile motor vehicle subject to the same, if not more, licensing and registration regulations as other vehicles and "necessarily lead to reduced expectations of privacy." *California v. Carney,* supra, 471 U.S. at 392, 105 S.Ct. at 2070, 85 L.Ed.2d at 414 (1985).

In the instant case appellant claimed no possessory interest in the taxicab and specially denied ownership of or interest in the contraband, asserting that it was not his and he had no idea how the item got under the front passenger seat. Appellant made no claim that he had used or attempted to use or expect privacy in the area under the seat even to deposit his chewing gum, an area in which the majority acknowledges that the cab driver, a perfect stranger, may also have had a degree of privacy. Appellant made no showing and did not establish

a legitimate expectation of privacy in the *particular* area.

Believe it or not, the majority reverses the trial court and the Court of Appeals, under the facts here presented, holding appellant had a legitimate expectation of privacy in the area under the front seat of the cab[2] and had standing to challenge the search of that area which revealed contraband he claimed under oath he did not own. Hogwash. The trial court did not err in overruling the motion to suppress. The judgment of the Court of Appeals was correct.

I dissent.

W.C. DAVIS, J., joins this dissent.

---

**2.** It is most interesting to observe that the majority seeks to bolster its position by quoting from "Houston Tex. Code, Sec. 46.29 (1985)" which may or may not have been in effect at the time of the 1984 offense, and which was not offered and proven at the suppression hearing which at the time was required before the trial court or this Court could consider the same. Judicial notice could not be taken of municipal ordinances at that time. See footnote # 1. Further, neither party relies upon such ordinance, only the majority imports the same into the case.