**Linda Evon DEDONATO, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–88–00426–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

April 5, 1990.

Robin Mitchell, Robert Marquez, Houston, for appellant.

John B. Holmes, Harris County Dist. Atty., Alan Curry, di Glaeser, & Kathy Giannaula, Asst. Harris County Dist. Attys., for appellee.

Before EVANS, C.J., and DUGGAN and O'CONNOR, JJ.

## ON MOTION FOR REHEARING

EVANS, Chief Justice.

We withdraw our original opinion issued September 21, 1989, and substitute the following opinion in its stead.

In a nonjury proceeding, the trial court found appellant guilty of conducting a sexually oriented business without a permit, and assessed her punishment at three days confinement and a fine of $250.

■ In appellant's first point of error, she contends the county criminal court at law lacked jurisdiction over the offense charged in the information.

The information alleged that appellant had intentionally and knowingly delivered and provided merchandise, goods, and entertainment

> on the enterprise premises in a sexually-oriented commercial enterprise, namely an adult lounge, located within the corporate limits of the city of Houston at 5610 Richmond, and said adult lounge did not have a permit secured from the Chief of Police or his designated Director as required by Section 28–122(a) of the Houston City Ordinance governing sexually oriented businesses.

The Houston city ordinance is not in the record before us, but appellant has cited the applicable portions in her brief. According to appellant, section 28–122(a) of the ordinance provides:

> It shall be unlawful for any person to own, operate, or conduct any business in

an enterprise located within the city unless there is a permit for the enterprise. Code of Ordinances, City of Houston, Texas ch. 28, art. III, section 28–122(a) (1988).

Appellant argues, therefore, that the offense charged in the information is not a class B misdemeanor, and that the municipal court, not the county criminal court at law, had exclusive jurisdiction over the offense charged.

We disagree with appellant's contention. The legislature has expressly authorized municipalities to restrict the location of sexually oriented businesses and to require that such businesses obtain a permit before operating. Texas Local Gov't Code Ann. secs. 243.003(a) and 243.007 (Vernon 1988). The Code provides that sexually oriented businesses may be:

(1) restricted to particular areas; or

(2) prohibited within a certain distance of a school, regular place of religious worship, residential neighborhood, or other specified land use the governing body of the municipality or county finds to be inconsistent with the operation of a sexually oriented business.

Tex.Local Gov't Code Ann. sec. 243.006(a) (Vernon 1988). Cities may also restrict the density of such businesses. Tex.Local Gov't Code Ann. sec. 243.006(b) (Vernon 1988).

Appellant alleges in her brief that "the City of Houston ordinance is a general regulatory ordinance governing various aspects of the operations of sexually oriented businesses (the 'enterprises') within the municipality. The ordinance provides a comprehensive system for the issuance, denial, renewal and revocation of permits for the operation of such enterprises in the City of Houston. The ordinance provides that a permit will issue if it meets certain conditions enumerated in section 28–125 involving location and the types of signs, exterior painting, lights, and pictorial representations to be used on the premises, among other things. It further provides for enforcement of the ordinance by creating criminal liability for violations of certain specific sections of the ordinance."

According to appellant's brief, the proscribed conduct is clearly defined in the ordinance by the use of the words, "It shall be unlawful. . . ." The ordinance makes it unlawful to (1) operate an enterprise without a permit (section 28–122(a)); (2) operate without the permit posted within the enterprise (section 28–122(b)); (3) counterfeit, forge, change, deface, or alter a permit (section 28–128(b)); (4) allow merchandise or activities to be visible from outside the enterprise (section 28–129(a)); allow certain types of lights and pictorial representations to be used on the exterior of the enterprise (section 28–129(b)); (5) allow certain types of exterior painting (section 28–129(c)); (6) allow certain types of exterior signs (section 28–130(a)); (7) allow persons younger than seventeen years of age to be on the premises section 28–131(a).

The appellant further alleges that the criminal penalties for violations of the above-enumerated regulations are set out in section 28–133 of the ordinance, which states that:

Violation of any provision of this article that is not otherwise punishable pursuant to Article 2372w, Texas Revised Civil Statutes, as amended, shall be punishable by a fine of not less than one hundred fifty dollars ($150.00) nor more than two hundred dollars ($200.00) . . .

Under the provisions of the Local Government Code, the city of Houston is authorized, in deciding whether to issue a permit to a sexually oriented business, to determine whether the enterprise complies with the location requirements set forth in its ordinance. *See Memet v. State,* 642 S.W.2d 518, 522 (Tex.App.—Houston [14th Dist.] 1982, pet. ref'd).

We conclude that the Houston city ordinance was adopted pursuant to the authority of chapter 243 of the Local Government Code, and, therefore, that the violation of its location requirements is punishable as a class B misdemeanor. *See State v. Coleman,* 757 S.W.2d 127 (Tex.App.—Houston [1st Dist.] 1988, pet. ref'd).

We accordingly hold that the county criminal court at law had jurisdiction over

the offense alleged, and we overrule the first point of error.

■ In her second point of error, appellant asserts the trial court assessed punishment exceeding the maximum punishment applicable to the offense. She argues that, because the information did not contain an allegation about the location of the offense, the offense is punishable by a fine only. In support of her position, she cites *Smith v. State*, 573 S.W.2d 546 (Tex.Crim.App.1978).

In *Smith*, the Court of Criminal Appeals held that an indictment alleging theft of property valued at more than $200 was not fundamentally defective for failure to specify the upper limits of the property's value. The court stated, however, that the defendant could not be convicted of theft of a higher degree than the offense charged. *Smith*, 573 S.W.2d at 547. Here, appellant argues that the failure of the information to allege a location-related violation requires the court to impose the lesser penalty, i.e., a fine only, for the offense charged.

As the State correctly points out in its motion for rehearing, appellant failed to present a motion to quash or otherwise object to the information, either at the time of or before trial. Moreover, appellant does not challenge the sufficiency of the evidence showing a location offense. Indeed, a police officer testified, without objection, that the permit had been denied because, among other reasons, the applicant's business violated the location requirements of the ordinance.

■ A related argument, asserted by appellants for the first time on appeal, in her second point of error, is that the alleged defect in the information, i.e., the absence of an allegation charging a location violation, constitutes fundamental error.

A defendant who does not object to a defect, error, or irregularity of form or substance in an indictment or information, before the date on which the trial on the merits commences, waives and forfeits the right to object thereto on appeal, or in any other post-conviction proceeding. Tex. Code Crim.P.Ann. art. 1.14(b) (Vernon Supp.1989); *see also Gabriel v. State*, 756

S.W.2d 68, 70 (Tex.App.—Houston [1st Dist.] 1988, no pet.). We hold that the State's failure to specifically allege a location violation in the information constitutes a defect that appellant was required to raise by an objection. Otherwise, the defect was waived. Tex.Code Crim.P.Ann. art. 1.14(b) (Vernon Supp.1989). We accordingly overrule appellant's second and third points of error.

■ We finally consider an issue which was not asserted by appellant in the trial court, nor assigned as an error on this appeal, but raised only by the dissent as an unassigned error. This issue is whether the trial court properly considered the Houston city ordinance as a basis for the conviction.

The Houston city ordinance was not formally introduced into evidence, and, therefore, it is not in the record before us. A city of Houston police officer testified, however, without objection, about provisions of the ordinance relating to sexually oriented businesses. The officer testified that he had brought a copy of the ordinance with him to court, and, without objection from appellant, he quoted certain relevant provisions from the ordinance. He also explained the procedural aspects of processing permit applications under the ordinance. He further testified, from records in his possession, that the commercial enterprise in question had been denied a permit, and stated that its appeal from such denial had been rejected. The officer explained that the permit had been denied because, among other reasons, the applicant's business was located within 1,000 feet of another previously established sexually oriented enterprise.

We note that appellant made no complaint, either in the trial court or on this appeal, about the court's consideration of the applicable provisions of the ordinance. Indeed, appellant cites several applicable portions of the ordinance in her brief. Prior to the prompting of the dissent in its original opinion, there was no dispute whatsoever about the applicable provisions of the ordinance.

The dissent argues that we must reverse the conviction because of the Texas Court of Criminal Appeals decision in *Howeth v. State*, 645 S.W.2d 787 (Tex.Crim.App.1983), and this Court's earlier decision in *Martin v. State*, 731 S.W.2d 630, 631 (Tex.App.— Houston [1st Dist.] 1987, pet. ref'd).

*Howeth*, decided before the 1986 adoption of the Rules of Criminal Evidence (including Rule 204 on judicial notice), specifically restricted its holding to convictions in municipal court followed by trial de novo in county court at law. Our case is not a trial de novo, but originated in the county court at law. Further, unlike our case, the *Howeth* opinion notes that "the record of the appeal is as bare as Mother Hubbard's cupboard concerning what the 'contents' of the ordinance might be." *Howeth*, 645 S.W.2d at 789. Here, the police officer testified without objection about the contents of the ordinance, and appellant refers to applicable portions of the ordinance in her brief.

*Martin* is distinguishable for several reasons, but most importantly, because the defendant in that case *did* raise the objection in the trial court and also asserted the point on appeal. Thus, in *Martin*, not only did the trial court have an opportunity to consider and rule on the objection, but the issue also was properly preserved for this Court's review by a point of error on appeal. The circumstances in *Martin* are materially different from the state of the record in this case, and, contrary to the arguments presented by the dissent, we conclude that the trial court's conviction must be upheld.

The State's motion for rehearing is granted, appellant's motion for rehearing is denied, and the judgment of the trial court is affirmed.

O'CONNOR, J., dissents.

O'CONNOR, Justice, dissenting.

Linda Evon Dedonato, a waitress at the Cascades Club, was convicted in county criminal court for serving drinks at a club that did not have a sexually oriented business permit. The State offered the testimony of Officer Shields to prove that the Cascades Club was a sexually oriented business operating without a license. From his testimony, it appears Officer Shields had a copy of the ordinance in his hand while he was on the stand. Officer Shields described parts of the ordinance, which defines a sexually oriented business, and some of the permit guidelines. He explained how a club applies for a permit, how the police department investigates the application, and, if the permit is refused, how the club appeals. Officer Shields said, in his opinion, the Cascades Club was a sexually oriented business.

Officer Shields testified that section 28–122(a) of the Houston city ordinance requires a person to have a permit to own, operate, or conduct a sexually oriented business. And, he said, section 28–112(c) presumes a business does not have a permit if one is not posted at the front door, as required by section 28–122(b). Officer Shields did not testify about the penalties of the ordinance. The State did not ask the trial court to take judicial notice of the ordinance and did not attempt to introduce it into evidence.

No copy of the ordinance was included in this record. In her motion for rehearing, appellant contends the majority based its decision on the wrong version of the ordinance.[1]

I. The city ordinance

The majority and I disagree on how we define the problem in this case. The majority seems to hold the ordinance was merely one more piece of evidence and, if improperly considered, defendant was required to object. I believe the ordinance was an element of the State's case that the State did not prove. When the State does not prove all of the elements of an offense, a defendant is not obliged to inform the State of its oversight.

---

1. In the majority's original opinion, it quoted copiously from the ordinance. On rehearing, appellant contends we based our opinions on the wrong ordinance. In response, the majority now relies on only the quotes and summaries of the ordinance from appellant's briefs.

This Court has already held that the State's failure to ask the trial court to take judicial notice of the city ordinance, or to introduce the ordinance into evidence, is fundamental error. *Martin v. State*, 731 S.W.2d 630, 631 (Tex.App.—Houston [1st Dist.] 1987, pet. ref'd). Today's opinion is at odds with our decision in *Martin*.

### A. Judicial notice of ordinances under rule 204

The adoption of rule 204, TEX.R.CRIM. EVID., eased the burden of getting a municipal ordinance into a criminal trial. Before the adoption of rule 204, a party was required to introduce a certified copy of it into evidence. *See generally* Wellborn, *Judicial Notice Under Article II of the Texas Rules of Evidence*, 19 St. Mary's L.J. 1, 28 (1987). Now, a party may still introduce it the old way, or, a party can get the ordinance into the record by the less formal method of asking the trial court to take judicial notice of it. P. McClung, *Lawyers Handbook for Texas Criminal Practice* 253 (1989).

When the State decides to employ rule 204 to get an ordinance into the record, the State must: (1) ask the court to take judicial notice of the ordinance; (2) provide the trial court with enough information so it can take notice of the ordinance; and (3) give the defendant notice. TEX.R.CRIM. EVID. 204. The defendant has the right, upon timely request, to a hearing on the propriety of the court's taking judicial notice of the ordinance. *Id.*[2]

### B. The *Martin* case

The majority says that *Martin* is distinguishable because the *Martin* defendant raised the objection *in the trial court*, and appellant here did not. The only objection raised by the *Martin* defendant was *after* trial, in a motion for instructed verdict. 731 S.W.2d at 631. A motion for instructed

verdict is not a trial-time objection to the evidence. A motion for instructed verdict is a request for judgment as a matter of law. *Martin*, therefore, stands for the proposition that no *trial time* objection was necessary to preserve the error.

In *Martin*, without using the phrase "fundamental error," this Court reversed the conviction and acquitted defendant. In arriving at that decision, we cited *Howeth v. State*, 645 S.W.2d 787, 789 (Tex.Crim. App.1983). In *Howeth*, the Court of Criminal Appeals held the failure to introduce a city ordinance was fundamental error even though the parties stipulated to the contents of the ordinance. In *Howeth*, the Court of Criminal Appeals reversed with directions to acquit, even though defendant did not assign error. *Id.* at 788.[3]

On rehearing, the majority says that *Howeth* is distinguishable from today's case because *Howeth* was issued before rule 204 was adopted; and, because the *Howeth* decision specifically restricted its holding to convictions in municipal court followed by trial de novo in county court at law. Both those two distinctions were also true at the time we issued *Martin*. Yet, in *Martin* we found the *Howeth* reasoning compelling. If the distinctions were not relevant in *Martin*, they are not relevant here.

The majority also states that, "unlike our case," the *Howeth* opinion noted that *the record of the appeal* was as bare as Mother Hubbard's cupboard. Maj. op. p. 325. Our cupboard is equally bare. If anything, the record in *Howeth* was stronger than the record here: the parties in *Howeth* stipulated to the contents of the Austin municipal code.

The majority tries to distinguish *Martin* by saying Officer Shields quoted "relevant provisions" of the ordinance. I disagree. The only sections of the ordinance Officer Shields read into the record were subsec-

---

2. In *Rahmani v. State*, 748 S.W.2d 618, 620 (Tex.App.—Houston [1st Dist.] 1988, pet. ref'd). This Court said, without any explanation, that the courts may take judicial notice of a city ordinance. I disagree with that statement.

3. The only point of error the *Howeth* defendant preserved was that some of the evidence that proved the location of the offense was inadmissible hearsay. *Howeth v. State*, 635 S.W.2d 636 (Tex.App.—Austin 1982), *rev'd*, 645 S.W.2d 787 (Tex.Crim.App.1983).

tions (1)a, b, c, and d, of an unidentified section of the ordinance. That subsection of the ordinance details the anatomical parts of the body that must be covered. The rest of Officer Shields' testimony was merely his understanding of the ordinance.

If the ordinance was part of the State's burden of proof, the error was not the trial court's error; the error was the State's failure to prove the elements of the crime. If the logic the majority urges here prevails, defendants will be required to object when the State fails to prove the elements of the offense, or waive the error.[4]

### C. Rule 204 and judicial activism

The majority has levelled the difference between rule 204 and rule 202, TEX.R.CRIM. EVID. Under rule 202, the trial court "may" take judicial notice of statutes of other states without being asked to do so by either party. Under rule 204, as written, a court may take judicial notice of an ordinance when a party complies with the requirements of the rule. Under the majority's new interpretation of rule 204, we will assume the trial court considered an ordinance if the ordinance is present in the courtroom and a witness talks about it on the stand.

There is no authority for the majority to re-write rule 204 to read the same as rule 202. The Texas Rules of Criminal Evidence were adopted by legislative enactment. Unless we decide the rule violates the constitution, we must apply it as written. The majority does not challenge the constitutionality of the rule. As an appellate court, it is not our prerogative to re-write rule 204; we are required to apply it as written.

### D. The objectives of stare decisis

One of the primary objectives of stare decisis is for a court to employ a reasoning process that can be replicated by the same court in later cases, by other courts in similar cases, and by lawyers to predict the resolution of analogous disputes. I believe this opinion frustrates that objective.

If the majority is rejecting the rationale of *Martin*, it should clearly state what the present rationale is so that others may apply it. If the majority is merely distinguishing the facts of *Martin* (because the officer in this case described the ordinance in more detail than did the officer in *Martin*). I think it is necessary to announce how much testimony is sufficient. I do not understand whether the majority rejects the *Martin* rationale or distinguishes its facts.

### E. The reason why

This case aptly illustrates why it is necessary for the trial court to take judicial notice of the ordinance or have the ordinance introduced into evidence. In her first point, appellant challenges the jurisdiction of the county court to hear the complaint. How are we to pass on the question without reading the ordinance? Every time an ordinance is challenged, shall we adjourn court, go to the city, and ask the city secretary to show it to us? If not, how are we to obtain it? *Lange v. State*, 639 S.W.2d 304, 306 (Tex.Crim.App. 1982), and *Karchmer v. State*, 61 Tex. Crim. 221, 134 S.W. 700 (1911). The problem the court predicted in *Lange* and *Karchmer*, is the problem here. The copy of the ordinance on which I rely is from a source other than the record.

### II. Jurisdiction

Although I do not believe we have the authority to engage in any analysis of the ordinance, I will rely on our unauthorized copy of the ordinance.

---

**4.** The only post–1984 case, in which the Court of Criminal Appeals has considered rule 204, is *Chapa v. State*, 729 S.W.2d 723, 728 (Tex.Crim. App.1987). In *Chapa*, the majority noted in passing that, under a Houston ordinance, a passenger in a taxi cab had an expectation of privacy. The majority defended itself against the challenge of the dissenting justices for consider-ing the ordinance, noting that it considered the ordinance as a *social* fact, not a legal fact. *Id.* In explaining rule 204, the majority said to request a court to take judicial notice of an ordinance (as a legal fact), a party "may be required" to make a *formal request*, as well as provide the court with "sufficient information." *Id.*

In her first point of error, appellant contends the county court did not have jurisdiction because municipal courts have original and exclusive jurisdiction over the offense. The majority responds by saying the ordinance was adopted pursuant to the authority of chapter 243 of the Local Government Code, and therefore, the county court had jurisdiction. I respectfully suggest the majority missed the point of appellant's challenge.

## A. The Local Government Code and location offenses

Under the authority of section 215.074 of the Local Government Code, cities may control the *location* and *conduct* of places of public amusement by requiring them to get a license. TEX.LOCAL GOV'T.CODE ANN. §§ 215.074 (Vernon 1988). A location or conduct offense under section 215.074 is punishable as a class C misdemeanor. TEX. LOCAL GOV'T.CODE ANN. § 54.001(b) (Vernon 1988). The jurisdiction of location or conduct offenses under section 215.074 is in municipal court. TEX.CODE CRIM.PROC.ANN. art. 4.14 (Vernon Supp.1990).

Under the authority of section 243.001 of the Local Government Code, cities may control only the *location* of sexually oriented businesses by requiring such businesses to get a permit. TEX.LOCAL GOV'T.CODE ANN. §§ 243.003(a) and 243.007 (Vernon 1988). A location offense under section 243.001 is punishable as a class B misdemeanor. TEX. LOCAL GOV'T.CODE ANN. § 243.008 (Vernon 1988). The jurisdiction of a location offense under section 243.001 offense is in county court.

If a city controls the *location* of sexually oriented businesses, it may do so under the authority of section 215.074 or section 243.-001 of the Local Government Code. The authority given to the city by the adoption of section 215.074 was not diminished by section 243.001. *See Jolar Cinema of Houston, Inc. v. City of Houston,* 695 S.W.2d 353, 355 (Tex.App.—Houston [1st Dist.] 1985, no pet.).

If a city controls *more than the location* of sexually oriented businesses, it cannot do so under the authority of the section 243.001 of the Local Government Code. Any city ordinance that restricts more than the location of a sexually oriented business does so under the authority of section 215.-074 of the Local Government Code.

## B. Houston's ordinance

Houston adopted the sexually oriented business ordinance under the authority granted by either section 215.074 or section 243.006(a) of the Local Government Code. Section 28–122(a) of the Houston city ordinance requires the director to issue a permit for a sexually oriented business upon application, unless one or more of the conditions listed in section 28–125 is present. Section 28–125 of the ordinance restricts the location of sexually oriented businesses as well as other matters. Some of the non-location impediments to a license are: the applicant does not complete the application or gives false information; the outside appearance of the business does not comply with regulations; or, the director revokes a permit for the same enterprise within 180 days. Houston City Ordinance chapter 28, article III, section 28–125.

Section 28–133, which outlines the criminal penalties for violating any of the city ordinances related to permits, states:

> Violation of any provision of this article that is *not otherwise punishable pursuant to [section 243.001 of the Local Government Code]* shall be punishable by a fine of not less than one hundred fifty dollars ($150.00) nor more than two hundred dollars ($200.00)....

(Emphasis added.) The City's scheme for violations, therefore, is that a *location* or *conduct* offense section 215.074 of the Local Government Code is punishable as a class C misdemeanor in municipal court; a *location* offense under section 243.001 of the Local Government Code is punishable as a class B misdemeanor in county court.

Subsection (a) of section 28–125, restricts the *location* of sexually oriented businesses. Because it restricts *location,* it could have been enacted under either chapter 215 or chapter 243 of the Local Government Code. The subparts of section 28–125, which restrict non-location matters, could

not have been enacted under chapter 243 of the Local Government Code; they must have been adopted under chapter 215 of the Local Government Code. They are, therefore, non-location violations punishable only by a fine and fall within the exclusive and original jurisdiction of the municipal courts under article 4.14, TEX.CODE CRIM. PROC.ANN. (Vernon Supp.1990).

### C. The information

We know that the State charged appellant with violating section 28–122(a) of the Houston ordinance for conducting business at a place that did not have a permit. From the information, however, we do not know why the Cascades Club did not have a permit.

If appellant was charged with working for a sexually oriented business that did not have a permit because of a *location* restriction, either the municipal or county court could have had jurisdiction over the offense. If, however, appellant was charged with working for a sexually oriented business that did not have a permit because of a *non-location* restriction, the municipal court had exclusive jurisdiction over the offense.

This Court must determine whether appellant was charged for violation of a city ordinance authorized under section 215.074 or section 243.001. The information described appellant's offense as working in an

> adult lounge [that] did not have a permit secured from the Chief of Police or his designated Director as required by Section 28–122(a) of the Houston City Ordinance governing sexually oriented businesses.

Nothing in the information states why the Cascades Club did not have a permit. I would hold the State did not allege the facts necessary to invoke the jurisdiction of the county court.

The majority contends that because appellant did not object to the information, she waived the error. I do not believe she could waive error to the trial court's jurisdiction. *Lackey v. State*, 574 S.W.2d 97, 100 (Tex.Crim.App.1978). I would hold ap-

pellant did not waive her right to be tried by a municipal court by failing to voice an objection to the jurisdiction of the county court. *Id.*

### III. Punishment

In her second point of error, appellant claims that the trial court erred in assessing punishment that exceeded the maximum punishment applicable to the offense for which she was convicted. The information filed against appellant did not include an element pertaining to the location of the club.

In the majority's original opinion, it sustained appellant's second point of error. On rehearing, the majority reverses itself and overrules appellant's second point. I think the majority was correct the first time.

If the county court had jurisdiction of the violation, the omission of the element of location restricts the punishment to the lowest penalty range. *See Smith v. State*, 573 S.W.2d 546 (Tex.Crim.App.1978). In *Smith*, an indictment for third degree felony theft alleged the value of the property was over $200 but did not specify the upper limit of $10,000. The failure to allege the upper limit prohibited conviction for theft in the first or second degree, even if the greater value had been proven. *Id.* at 547.

Here, the element of location is akin to the hierarchy of property values in *Smith*. Applying the rationale of *Smith:* even though the State proved that the offense was a location offense, the omission of the punishment-determining element of location restricts the punishment range to the lowest common classification, a fine-only offense. Appellant is, at the minimum, entitled to a new hearing on sentencing.

### IV. Fundamental error

In her third point of error, appellant contends the information was fundamentally defective because it did not allege an essential element of the offense. I agree.

I believe the information was fundamentally defective because it did not identify the club's permit violation. The informa-

tion could be interpreted to encompass: (1) a non-location violation of the permit requirements, which is a fine-only offense; (2) a location offense under section 215.074, which is a fine-only offense; or (3) a location offense under section 243.001, which is a fine and jail offense. The information did not state that the club did not have a permit because it was not properly painted, signed, or located.

In *Standley v. State*, 517 S.W.2d 538, 541 (Tex.Crim.App.1975), the court of criminal appeals held that an indictment should allege every fact which may affect the degree or kind of punishment. Without such allegations, the punishment cannot be determined. *Hawkins v. State*, 383 S.W.2d 416, 417 (Tex.Crim.App.1964). Without the facts necessary to determine punishment, the indictment in *Standley* was held to be fundamentally defective. *Standley*, 517 S.W.2d at 541. The court reversed on unassigned error. *Id.* at 542.

The majority responds by saying appellant did not challenge the information on this ground until appeal, and therefore waived the issue, citing article 1.14, TEX. CODE CRIM.PROC.ANN. (Vernon Supp.1990). I do not believe article 1.14(b) abolished the concept of fundamental error in the charging instrument. *See e.g. Fortune v. State*, 745 S.W.2d 364, 370 (Tex.Crim.App.1988) (no waiver of error for failure to object to indictment that joined two offenses); *Murk v. State*, 775 S.W.2d 415, 416 (Tex.App.— Dallas 1989, pet. granted) (no waiver of error for failure to object when State amended indictment by deleting essential element of intent); *Milam v. State*, 742 S.W.2d 810, 815 (Tex.App.—Dallas 1987, pet. granted) (no waiver of error for failure to object to indictment alleging conduct that was not illegal at the time the conduct occurred).

The majority fails to recognize the distinction between jurisdictional defects and defects in the sufficiency of notice of the offense. If the information does not state facts which vest the court with jurisdiction, it is void. *Murk*, 775 S.W.2d at 416. Only non-jurisdictional defects in the information are waived for failure to object. *Watkins*

*v. State*, 741 S.W.2d 546, 549 (Tex.App.— Dallas 1987, pet. ref'd).