

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-19-00084-CR

Gabriel **MARTINEZ**,

Appellant

v.

The **STATE** of Texas,
Appellee

From the 379th Judicial District Court, Bexar County, Texas
Trial Court No. 2016CR7552
Honorable Ron Rangel, Judge Presiding

Opinion by:  Irene Rios, Justice

Sitting:  Sandee Bryan Marion, Chief Justice
Rebeca C. Martinez, Justice
Irene Rios, Justice

Delivered and Filed: October 14, 2020

AFFIRMED

Appellant Gabriel Martinez appeals his conviction for the offense of murder. In a single issue, Martinez contends the trial court erred by admitting evidence extracted from a cell phone without the benefit of a search warrant. We affirm.

## BACKGROUND

On May 18, 2016, San Antonio Police Department ("SAPD") dispatched officers to respond to an emergency call for a shooting in progress. When officers arrived at the location, they found Martinez and the complainant, Lori Ortiz, lying on the bedroom floor. Both suffered

gunshot wounds. Paramedics transported both Martinez and Ortiz to the hospital, but Ortiz did not survive. The medical examiner later determined Ortiz "died as a result of multiple rifle wounds."

Sergeant Seferino Alvarado obtained a search warrant for Martinez and Ortiz's home and delivered the warrant to the location prior to officers processing the crime scene. The warrant contained language providing for, among other things, the "collection of any cellular phones . . . or any other electronic devices that would help in the establishment of the crime." Detective Timm Angell found a cell phone under a pile of bloody women's clothing on the floor of the bedroom where the shooting took place. According to Detective Angell, the cell phone "was powered up" and "[t]here was no lock code on it … ." To determine if the cell phone belonged to Ortiz, Detective Angell engaged the cell phone, and opened a folder labeled "selfies." In that folder, Detective Angell found "selfie" photos of Ortiz, and concluded the phone belonged to her. He collected the phone pursuant to the original search warrant and submitted it to the lab for a forensic download.

Ultimately, the State charged Martinez with causing Ortiz's death. The jury found Martinez guilty of the offense of murder, and based upon the jury's recommendation, the trial court sentenced Martinez to ninety-nine years' imprisonment. This appeal followed.

**ANALYSIS**

In his sole issue, Martinez contends the trial court erred by admitting evidence extracted from Ortiz's cell phone without a search warrant. The State responds that Martinez lacks standing to challenge the search of the cell phone because the cell phone does not belong to him and he does not have an expectation of privacy in the cell phone's contents.

**Standard of Review**

We apply a bifurcated standard to review a trial court's denial of a motion to suppress evidence. *Lerma v. State*, 543 S.W.3d 184, 189-90 (Tex. Crim. App. 2018). "[W]e afford almost complete deference to the trial court in determining historical facts" but we review de novo the trial court's application of the law to the facts. *Id*. at 190; *Wade v. State*, 422 S.W.3d 661, 667 (Tex. Crim. App. 2013). When, as here, a trial court does not make explicit findings of fact, we review the evidence in a light most favorable to the trial court's ruling. *Walter v. State*, 28 S.W.3d 538, 540 (Tex. Crim. App. 2000). We give almost total deference to a trial court's implied findings, especially those based on an evaluation of witness credibility or demeanor. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). We sustain the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *Id*. at 447-48. Finally, if a trial court erroneously admits evidence obtained in violation of the Fourth Amendment, the error is subject to a harmless error analysis. TEX. R. APP. P. 44.2(a); *Hernandez v. State*, 60 S.W.3d 106, 108 (Tex. Crim. App. 2001).

**Standing**

As a threshold matter, we address whether Martinez had standing to challenge the lawfulness of the cell phone search. The Fourth Amendment of the U.S. Constitution protects against unreasonable searches and seizures. U.S. CONST. amend. IV; *State v. Betts*, 397 S.W.3d 198, 203 (Tex. 2013). "A person has 'standing' to contend that a search or seizure was unreasonable if (1) he has a subjective expectation of privacy in the place or object searched, and (2) society is prepared to recognize that expectation as 'reasonable' or 'legitimate.'" *State v. Granville*, 423 S.W.3d 399, 405 (Tex. Crim. App. 2014). "The 'standing' doctrine ensures that a person may claim only that his own rights have been violated; he cannot assert that he is entitled to benefit because the rights of another have been violated." *Id*. "A person's constitutional right

to be free from unreasonable searches is a personal right that cannot be asserted vicariously." *Id*. "A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." *Rakas v. Illinois*, 439 U.S. 128, 134 (1978).

"In *Rakas v. Illinois*, the substantive question of what constitutes a 'search' for purposes of the Fourth Amendment was effectively merged with what had been a procedural question of 'standing' to challenge such a search." *Chapa v. State*, 729 S.W.2d 723, 727 (Tex. Crim. App. 1987). Accordingly, a Fourth Amendment claim may be based on a trespass theory of search, where one's own personal effects have been trespassed, or a privacy theory of search, where one's own expectation of privacy was breached. *State v. Martinez*, 570 S.W.3d 278, 283 (Tex. Crim. App. 2019).

Under the privacy theory, an appellant must show that (1) he had a subjective expectation of privacy in the place or object searched and (2) "society is prepared to recognize that expectation as reasonable or legitimate." *Id*.; *see Betts*, 397 S.W.3d at 203. When considering whether an appellant demonstrated a reasonable expectation of privacy,

> we examine the totality of the circumstances surrounding the search, including (1) whether the accused had a property or possessory interest in the place invaded; (2) whether he was legitimately in the place invaded; (3) whether he had complete dominion or control and the right to exclude others; (4) whether, before the intrusion, he took normal precautions customarily taken by those seeking privacy; (5) whether he put the place to some private use; and (6) whether his claim of privacy is consistent with historical notions of privacy.

*Betts*, 397 S.W.3d at 203-04. This is a non-exhaustive list and no one factor is dispositive. *Id*. at 204.

## Discussion

Martinez filed a motion to suppress the contents of the cell phone prior to trial, but the trial court did not rule upon that motion. During the testimony of Robert Rackley with the SAPD crime

scene unit, the State sought to admit an extraction report that detailed the contents found on the cell phone, as well as certain contents of the cell phone. Martinez objected, in part, on Fourth Amendment grounds, arguing that he had an expectation of privacy in the contents of the cell phone and thus the search of the cell phone required a warrant. The State responded that Martinez lacked standing because it was obvious the phone did not belong to Martinez. The trial court overruled the Fourth Amendment objection and admitted the report and cell phone contents.

Martinez relies on the United States Supreme Court's opinion in *Riley* to support his argument that the SAPD improperly searched the cell phone without a warrant. *See Riley v. California*, 573 U.S. 373 (2014). Martinez additionally contends he "had a reasonable and legitimate expectation of privacy in the cell phone and its private contents" because the cell phone was found inside Martinez's bedroom at his residence and within his reach. Martinez also argues his purchase of the cell phone and his use of the cell phone to send text messages and make calls the day before and the day of the offense required authorities to obtain a warrant to search it.[1]

Because the issue was litigated at trial, we consider the evidence admitted at trial in evaluating the trial court's ruling. *See Gutierrez v. State*, 221 S.W.3d 680, 687 (Tex. Crim. App. 2007) (recognizing that trial evidence may be considered in reviewing a suppression ruling when the suppression issue is litigated at trial). Detective Timm Angell testified he found the cell phone in question on the floor near Ortiz's clothing. When the detective picked up the phone from the floor, it was powered on and it did not have a lock code. On the screen display, Detective Angell discovered a folder labeled "selfies," which he opened. The folder contained "pictures of [Ortiz] holding the phone away from her, taking selfie photos." The detective concluded the phone belonged to Ortiz. Detective Angell collected the cell phone pursuant to the original search warrant

---

[1] Despite his assertion in his brief, the record reflects Martinez testified, "We actually got new phones, his and hers," without any mention of who specifically purchased Ortiz's phone.

that allowed for the "[c]ollection of any cellular phones or any other electronic devices that would help in the establishment of the crime." He submitted the cell phone to the lab for a forensic download without obtaining an additional warrant. Rackley explained during his testimony that because the cell phone belonged to Ortiz, the complainant, there was implied consent to search the phone.

Tony Guzman, Ortiz's boyfriend, received several text messages from Ortiz's cell phone the day before the offense. According to Guzman, although the text messages came from Ortiz's cell phone, the messages were actually from Martinez. Guzman also received phone calls made by Martinez from Ortiz's phone on the day of the offense. When Martinez was questioned about text messages sent to Guzman from Ortiz's cell phone—the cell phone in question—Martinez responded, "That's not my phone." Martinez stated that he saw the text message but reiterated that the phone did not belong to him.

On this record, we defer to the trial court's implied finding that Martinez held no reasonable expectation of privacy to the searched phone. The trial court was the sole judge of the credibility of the witnesses and evidence regarding the ownership, possession, and use of the phone. *See Lerma*, 543 S.W.3d at 190. Martinez testified the cell phone belonged to Ortiz and denied that the cell phone belonged to him. The evidence produced at trial reflected that the cell phone was recovered from under a pile of Ortiz's clothes, the "selfie" photos found on the cell phone were of Ortiz, and the messages found on the cell phone were directed to Ortiz. The record supports the trial court's implied finding that the cell phone belonged to Ortiz rather than Martinez and, more importantly, that Martinez held no subjective and reasonable expectation of privacy to the searched phone. As appellant lacks standing to challenge the fruits of the searched cell phone, we need not address the lawfulness of the cell phone search.

An appellant who challenges a search bears the burden of proving facts demonstrating a legitimate expectation of privacy and, thus, standing to raise a Fourth Amendment claim challenging the search. *Villareal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996). Here, Martinez has not met that burden. Accordingly, we sustain the trial court's ruling as reasonably supported by the record and applicable law, and overrule appellant's sole issue on appeal.

### CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.

Irene Rios, Justice

DO NOT PUBLISH